NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MATTHEW A. SENIOR, : | |
| : | |
| Petitioner, : | Civil No. 12-0127 (RBK) |
| : | |
| v. : | |
| : | |
| DONNA ZICKEFOOSE, et al., : | **OPINION** |
| : | |
| Respondents. : | |

**APPEARANCES:**

Matthew A. Senior, Pro Se
03385-049
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Karen Helene Shelton
Office of the US Attorney
402 East State Street
Trenton, NJ 08608
Attorney for Respondents

**KUGLER, District Judge**

Matthew A. Senior ("Petitioner"), an inmate previously incarcerated at FCI Fort Dix in New Jersey, filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. Respondents filed a Response to the Petition and the administrative record of

1

the case (docket entry 6). For the following reasons, this Court will dismiss the petition.

## BACKGROUND

Under 18 U.S.C. § 3624(c)(1), as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008 ("the Second Chance Act"), "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community corrections facility...."

Petitioner received a 120-month sentence after conviction in the United States District Court, District of New Hampshire for drug and witness tampering offenses. In his petition, Petitioner argues that his Unit Team did not properly consider his homelessness, indigency, and unemployed status when considering his Residential Re-Entry Center ("RRC") placement recommendation.

The Response to the Petition filed by Respondents includes the administrative record of the case. It reveals that on June 3, 2011, the Unit Team considered Petitioner's RRC placement. They completed a RRC Consideration/Re-Consideration Form which outlined the factors to consider in formulating an RRC start date. (Response, p. 8).

After consideration, it was determined that Petitioner would receive an RRC placement of 150 days.  The Unit Team noted:

> Regarding release planning, inmate Senior stated that he would live alone and would need to find an apartment upon release from custody. He stated that he would stay in a homeless shelter until he was reestablished. As of now, inmate Senior has no promise of employment, however Unit team feels that 150 days RRC placement time would help to facilitate a successful transition back into the community. According to his PSI, inmate Senior has been incarcerated for the past 6 years. He has his high school diploma and an Associate Degree in Business Management. He has programmed well during this period of incarceration taking various beneficial classes. During Mr. Senior's incarceration, he has worked in the Safety Department as a clerk, and in Education as a Tutor. Mr. Senior's parents are deceased, and he no longer associates with his sisters. He has a daughter who is in college who supports him emotionally. Mr. Senior arrived at this facility on August 9, 2005, and has gained some marketable skills by working in the Safety Department. Based on his educational background, past employment, community and family resources, assets and employable skills, the Unit Team feels that the recommendation for RRC is substantiated. In addition, The Unit Team discussed methods to secure employment ... i.e. employment center etc. Unit Team also encouraged inmate Sultan [sic] to begin reaching out to prospective employers prior to his release from custody.

(Declaration of Laurie Alexander, Ex. 2).

Petitioner did not file any administrative remedies concerning his claims.

## DISCUSSION

### A. Petitioner Has Failed to Exhaust Remedies.

The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by

the BOP for "review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. *See* 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. *See* 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. *See id.* Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

According to the BOP's records, Petitioner has not filed any administrative remedies. (Answer, p. 7, citing Declaration of Tara Moran).

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available

4

administrative remedies. *See, e.g., Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Arias v. United States Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981); *Soyka v. Alldredge*, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

*Goldberg v. Beeler*, 82 F.Supp.2d 302, 309 (D.N.J. 1999), *aff'd*, 248 F.3d 1130 (3d Cir. 2000); *see also Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir.1998) (exhaustion not required where petitioner demonstrates futility).

Here, Petitioner has not attempted to exhaust administrative remedies. Further, Petitioner has not alleged any facts that would permit this Court to find that exhaustion of his administrative remedies would be futile or that requiring exhaustion would subject Petitioner to "irreparable injury." As such, the petition must be dismissed for failure to exhaust.

B.   **Alternatively, Petitioner's Case is Now Moot.**

According to the federal inmate locator website, www.bop.gov, Petitioner was released from federal custody on November 29, 2012. Therefore, his claims regarding RRC placement and the Second Chance Act are moot.

Federal courts are not empowered to decide moot issues. *See* U.S. Const. art. III, § 2, cl. 1.; *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). To avoid mootness, a controversy must exist at all stages of review. *See id.* (citing *New Jersey Turnpike Auth. v. Jersey Central Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985)).

When Petitioner was released, "the Petition became moot because Petitioner was no longer threatened with 'an actual injury traceable to the [BOP] and likely to be redressed by a favorable judicial decision.'"  *Hagwood v. Grondolsky*, 2009 WL 455499 (D.N.J. Feb. 19, 2009) (Hillman, J.) (unpubl.) (finding that Petitioner's placement into home confinement rendered his petition challenging the calculation of time for placement under the "Second Chance Act" moot) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). *See also Chu v. Schultz*, 2009 WL 689675 (D.N.J. Mar.11, 2009) (Kugler, J.) (unpubl.) (also finding that Petitioner's placement into halfway house rendered Petition challenging calculation of time for placement under "Second Chance Act" moot).

6

In the instant case, because the issues are no longer "live" and because a controversy no longer exists, the issues raised in the petition are moot.

## C. Alternatively, Petitioner's Claims Have No Merit.

The Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for up to the final twelve months of his or her sentence." *Lovett v. Hogsten*, 2009 WL 5851205 (6th Cir. Dec.29, 2009) (unpubl.); *see also Travers v. Federal Bureau of Prisons*, 2009 WL 4508585 (D.N.J. Nov. 30, 2009) (Hillman, J.) (finding that "... nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved. These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations.").

In this case, Petitioner was considered for RRC placement, and, in fact, received an RRC placement of 150 days by his Unit Team at FCI Fort Dix. This Court finds no reason to upset the findings of the BOP. Although Petitioner disagreed with the BOP's decision, it is clear that Petitioner was properly considered, and thus no constitutional violation occurred.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is hereby dismissed.

An appropriate Order accompanies this Opinion.


s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated:  March 7, 2013